**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Tammy Dobbin, Colleen Dobbin and Dolores Fletcher Hart, | ) | |
| | ) | 10 C 268 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Judge Matthew F. Kennelly |
| | ) | |
| Wells Fargo Auto Finance, Inc., Silicon Valley Recovery, Inc., F3 Solutions, LLC, Reliable Recovery Services, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT - CLASS ACTION
### INTRODUCTION

1.      Plaintiffs, Tammy Dobbin, Colleen Dobbin and Dolores Fletcher Hart bring this action to secure redress from unfair and deceptive trade practices, unlawful debt collection practices, invasion of privacy and defamation engaged in by defendants, Wells Fargo Auto Finance ("Wells Fargo"), Silicon Valley Recovery, Inc. ("Silicon Valley"), F3 Solutions, LLC ("F3") and Reliable Recovery Services ("Reliable Recovery") (together Silicon Valley, F3 and Reliable Recovery are "the Corporations").  Plaintiffs allege violations of the Illinois Consumer Fraud Act, 815 ILCS 505/2 *et seq*. (the "ICFA"), the Illinois Collection Agency Act,  225 ILCS 425/1 *et seq*. (the "ICAA"), invasion of privacy, defamation.     Plaintiffs are seeking an injunction to stop defendants' practices.

2.      Colleen Dobbin and Tammy Dobbin also bring a claim for violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 (the "TCPA") against Wells Fargo on behalf of themselves and other class members.

3.      Plaintiffs' claims against Wells Fargo are for its own actions, in contacting

numerous third parties regarding the debt in question, as well as for vicarious liability for its agents' actions.

## VENUE AND JURISDICTION

4.      Venue and personal jurisdiction over defendants in Illinois are proper because:

      a.      Wells Fargo, Silicon Valley, F-3 and Reliable Recovery do business here.

      b.      Wells Fargo, Silicon Valley, F-3 and Reliable Recovery committed torts in Illinois.

## PARTIES

5.      Plaintiffs are individuals who reside in Cook County, Illinois.

6.      Defendant, Wells Fargo, is a California Corporation.  Its registered agent in Illinois is Illinois Corporation Service, 801 Adlai Stevenson Drive, Springfield, IL 66219.

7.      Defendant, Silicon Valley, is a California Corporation.  At all times relevant to this complaint, Silicon Valley was acting as an agent for Wells Fargo.

8.      Defendant, F3, is a Delaware Corporation.  At all times relevant to this complaint, F3 was acting as an agent for Wells Fargo.  Its registered agent in Illinois is Michael J. Harazin, 314 Driftwood Lane, Aurora, IL 60504.

9.      Defendant, Reliable Recovery Services, is an Illinois Corporation.  At all times relevant to this complaint, Reliable Recovery Services was acting as an agent for Wells Fargo.

10.      Wells Fargo has hired the Corporations in order to collect its debts or repossess its vehicles. Wells Fargo retained the right to direct and control these activities carried out by the Corporations.

2

## FACTS

11.     On October 16, 2006, Ms. Hart purchased a used vehicle from Elmhurst Lincoln-Mercury in Elmhurst, Illinois and signed a retail installment contract.

12.     Ms. Hart does not have a driver's license.

13.     Ms. Hart is a 78 year old woman with diabetes, high blood pressure and other health issues.

14.     The car was purchased by Ms. Hart so that her granddaughter, Ms. Tammy Dobbin could drive Ms. Hart to various medical appointments and errands and also for Ms. Dobbin's own personal use.

15.     The loan was assigned to Wells Fargo.

16.     In or around December 2007, Ms. Hart's loan became delinquent.

17.     Tammy Dobbin is Ms. Hart's granddaughter.

18.     Colleen Dobbin is Ms. Hart's daughter.

## Silicon Valley and F3

19.     In or before May 2008, a message was posted to Ms. Tammy Dobbin's MySpace page by Silicon Valley and/or F3 advising her that she must turn in the vehicle or it would be reported as stolen.

20.     This posting was seen by Ms. Tammy Dobbin's MySpace friends.

21.     Silicon Valley and/or F3 then contacted four individuals who were listed on MySpace as Ms. Tammy Dobbins' friends and told them that Ms. Tammy Dobbin was behind on loan payments and that she would be reporting the vehicle stolen if Ms. Tammy Dobbin did not contact her.

3

22.     On or around May 29, 2008, at 12:57 p.m., Silicon Valley placed the following message on the MySpace page of a friend of Ms. Dobbin, Ms. Biance McKinney:

> Hello,
>
> My name is Investigator Lisa Becker and I have been hired by Wells Fargo Auto Finance to locate Tammy Dobbin. Its in reference to a complaint filed against her. I can be reached at 916-458-0523. Thank You.

See attached Exhibit A.

23.     Ms. Tammy Dobbin had no interest in the vehicle purchased by Ms. Hart.

24.     The quoted statement alleges that a complaint had been filed against Ms. Tammy Dobbin. No complaint has been filed against Ms. Tammy Dobbin.

## Wells Fargo

25.     At some time in the Spring of 2008, an individual giving the name of Brandi and stating that she was calling from Wells Fargo called Colleen Dobbin, Stefan Hart,[1] and Ms. Hart's other daughter, Lynda Fletcher, and gave them all of the details of Ms. Hart's delinquent account. The phone number "Brandi" called from was 888-254-8159 ext. 42053.

### Calls to Colleen Dobbin

26.     "Mary" and "Brandi" of Wells Fargo called Colleen Dobbin repeatedly at her place of work. Colleen Dobbin told them repeatedly that it was not her loan and that she could not take personal calls at work.

27.     Wells Fargo used an automatic telephone dialing system to phone Ms. Colleen Dobbin on her cellular phone.

---

[1]     Ms. Hart's son.

4

28.     "Mary" and "Brandi" of Wells Fargo called Colleen Dobbin's cell phone and her phone number at work.

29.     Colleen Dobbin works at a busy currency exchange and would often "travel" between seven or eight branches.

30.     Colleen Dobbin's work at different branches was in order to supplement an existing workforce and/or train new employees.

31.     The ability to travel and train employees was considered a benefit for reliable employees who were able to take on more responsibility.

32.     The callers from Wells Fargo would try to reach her by phoning each of these different branches and asking for her.

33.     The phone calls were very frequent and lasted throughout 2008 and continued until as recently as April 2009.

34.     Colleen Dobbin's employer was aware that she was receiving these phone calls and grew increasingly irritated and angry with Colleen Dobbin because the calls disrupted her work at the currency exchange.

35.     Her employer told her repeatedly to make these phone calls stop.

36.     Colleen Dobbin told Wells Fargo at least ten times to stop calling her.

37.     Since this time, Colleen Dobbin has not been allowed to "travel" to different branches of her employer.

**Calls to Tammy Dobbin**

38.     Wells Fargo called Tammy Dobbin repeatedly on her cell phone. Wells Fargo was told that this was a cell phone number.

5

39.    Wells Fargo continued to dial this number even after being told that it was a cell phone number.

40.    Wells Fargo used an automatic telephone dialing system to phone Ms. Tammy Dobbin on her cellular phone.

**Calls to Stefan Hart**

41.    "Mary" of Wells Fargo  called Mr. Stefan Hart and told Mr. Hart that his mother is delinquent and she must make her loan payments or the car will be repossessed.

**Letters between Ms. Hart and Wells Fargo**

42.    After these calls started and the MySpace messages, Ms. Hart sent a letter to Wells Fargo asking that any further communication be in writing and advised them of the harassing phone calls and MySpace messages.

43.    In response, Ms. Hart received a letter from Wells Fargo on July 2, 2008.  See attached Exhibit B.

44.    Wells Fargo acknowledged receiving Ms. Hart's complaints regarding harassing and frequent phone calls, phone calls to family members and public internet messages.

45.    Wells Fargo notified Ms. Hart that her account will be noted as "Do Not Call" and any future communication would be via written correspondence.

46.    Wells Fargo noted that it is against Wells Fargo policy to communicate with customers via internet media unless they have the express written consent of the customer and that they are investigating whether such communication could have been made by the repossession vendor that they use.

47.    Wells Fargo never notified Ms. Hart of the results of any such investigation.

48.     Wells Fargo also failed to prevent further unfair, deceptive or abusive actions by its agents, despite being notified of its agents' improper actions.

**Reliable Recovery**

49.     At some time on or before May 30, 2008, an individual from Reliable Recovery knocked on Ms. Hart's neighbor, Ms. Priestley's, door.  He left the following notice with her, indicating that the notice concerned Ms. Hart.  Ms. Priestley brought the notice to Ms. Hart and discussed it with her.  Ms. Priestley noted that the man who brought the notice was visibly drunk. Following is the content of the notice: See attached Exhibit C.

**Effective August 8, 2003**

Sec. 16H-35 Concealment of Collateral, a person commits the offense of concealment of collateral when the person, with the intent to defraud, knowingly conceals removes, disposes, of, or converts to the person's own use or to that of another, any property mortgaged or pledged to or held by a financial institution.

(c) A financial crime, the full value of which exceeds $300 but does not exceed $10,000 , is a Class 3 felony.  When a charge of financial crime, the full value of which exceeds $300 but does not exceed $10.000, is brought, and the value of the financial crime involved is an element of the offense to be resolved by the trier of fact as either exceeding or not exceeding $300.

(d) A financial crime, the full value of which exceeds $10,000 but does not exceed $100,000 is a Class 2 felony.  When a charge of financial crime, the full value of which exceeds $10,000 but does not exceed $100,000, is brought, and the value of the financial crime involved is an element of the offense to be resolved by the trier of fact as either exceeding or not exceeding $10,000.

(e) A financial crime, the full value of which exceeds $100,000, is a Class I felony. When a charge of financial crime, the full value of which exceeds $100,000, is brought the value of the financial crime involved is an element of the offense to be resolved by the trier of fact as either exceeding or not exceeding $100,000.[2]

---

[2]     This is a conglomerate of sections 720 ILCS 5/16H-35 and 16H-60 of the Illinois Financial Crime Law.

**FINAL NOTICE**
TO SURRENDER VEHICLE CONTACT INVESTIGATOR
Michael R.
Office# (866)325-2989 Ext: 159848
(815)325-1166

50.     Additional notes were left with other neighbors or posted on their doors alleging that Ms. Hart had committed fraud and needed to turn the vehicle over or she would be arrested.

### Silicon Valley, F3, Reliable Recovery

51.     On April 21, 2009, Ms. Hart's son, Stefan Hart, received a call from an "investigator" from Silicon Valley, F3 or Reliable Recovery, calling from phone number 312-788-9770 and identifying himself as "Villano". "Villano" stated that Ms. Hart would be arrested for fraud and that the sheriff would be at the house in the morning to arrest everyone in the house for fraud and for harboring fugitives.

52.     Stefan Hart, who lives with his mother, Ms. Hart, has mental health problems and receives disability for these problems.  The repeated phone calls and threats of imprisonment so aggravated his mental condition that he ran away from home for three days as a result of his fear of going to prison.

53.     In April, 2009, Ms. Tammy Dobbin received a call from Silicon Valley, F3 or Reliable Recovery, calling from number 773-256-8900 and threatening imprisonment.

### Additional Communications

54.     In April 2009, Ms. Tammy Dobbin's brother, Thomas Dobbin, who resides in Texas, was contacted by unknown individuals alleging that Ms. Dobbin was delinquent in payment of the loan and that they were seeking to repossess the car and wanted to know her location.

8

55.     Her sister, Leslie Dobbin, received a similar phone call from an unknown individual.

## Damages

56.     Ms. Hart suffered economic damages as she spent postage and spent time, both of which are compensable, as a direct result of Wells Fargo's and its agents' actions.

57.     Ms. Hart suffered damages as a result of emotional distress:

> a.      Ms. Hart had excellent credit all of her life and the notification of her neighbors and family that she had debt problems was extremely stressful and embarrassing to her.

> b.      Ms. Hart suffers from diabetes and high blood pressure and the conduct of the defendants aggravated her medical condition.

> c.      Ms. Hart was hospitalized during the Summer of 2008 due to a deterioration in her health.  She was told by her physician that this deterioration could be stress related.

58.     Colleen Dobbin suffered an impairment to her advancement at her place of work, as described above, and suffered damages resulting from Wells Fargo's use of her cellular phone minutes.

59.     Tammy Dobbin suffered damages resulting from Wells Fargo's use of her cellular phone minutes.

60.     Tammy Dobbin suffered an impairment to her income as:

> a.      Tammy Dobbin formally worked independently as a loan officer.

> b.      Most of her clients were family and friends.

c.  As a result of the defendants' activities, her family and friends stopped trusting her with their personal information and no longer employed her as a loan officer.

d.  She suffered an injury to her income and reputation.

e.  It was a huge embarrassment to her for her family and friends to be notified that she had a debt problem.

f.  In addition, Tammy spent compensable time dealing with the defendants' contacts of herself, friends and family.

g.  Tammy subsequently ceased from working as a loan officer and lost her home to foreclosure.

## COUNT I – ICAA

61.  Plaintiffs incorporate all previous paragraphs.

62.  This claim is brought by Ms. Hart and Tammy Dobbin against the Corporations.

63.  The Corporations violated the ICAA because they stated to numerous third parties that Ms. Hart and/or Ms. Tammy Dobbin owed a debt and /or did not identify themselves and state that they are confirming the correct location information regarding a consumer.

64.  The Corporations are debt collectors pursuant to the ICAA.

65.  The Corporations communicated with third parties for reasons other than receiving location information.

66.  The Corporations communicated with third parties in connection with collection of a debt without the express consent of the debtor.

10

Section 9.1 of the ICAA provides, 225 ILCS 425/9.1:

> Any debt collector or collection agency communicating with any person other than the debtor for the purpose of acquiring location information about the debtor shall:
>
> (1) identify himself or herself, state that he or she is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his or her employer;
>
> (2) not state that the consumer owes any debt;
>
> (3) not communicate with any person more than once unless requested to do so by the person or unless the debt collector or collection agency reasonably believes that the earlier response of the person is erroneous or incomplete and that the person now has correct or complete location information;

Section 9.2 of the ICAA provides, 225 ILCS 425/9.2:

> (a) Without the prior consent of the debtor given directly to the debt collector or collection agency or the express permission of a court of competent jurisdiction, a debt collector or collection agency may not communicate with a debtor in connection with the collection of any debt in any of the following circumstances:
>
> *   *   *
>
> (b) Except as provided in Section 9.1 of this Act [225 ILCS 425/9.1], without the prior consent of the debtor given directly to the debt collector or collection agency or the express permission of a court of competent jurisdiction or as reasonably necessary to effectuate a post judgment judicial remedy, a debt collector or collection agency may not communicate, in connection with the collection of any debt, with any person other than the debtor, the debtor's attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the collection agency.
>
> (c) If a debtor notifies a debt collector or collection agency in writing that the debtor refuses to pay a debt or that the debtor wishes the debt collector or collection agency to cease further communication with the debtor, the debt collector or collection

11

agency may not communicate further with the debtor with respect to such debt, except to perform any of the following tasks:

(1) Advise the debtor that the debt collector's or collection agency's further efforts are being terminated.

(2) Notify the debtor that the collection agency or creditor may invoke specified remedies that are ordinarily invoked by such collection agency or creditor.

(3) Notify the debtor that the collection agency or creditor intends to invoke a specified remedy.

If such notice from the debtor is made by mail, notification shall be complete upon receipt. (d) For the purposes of this Section, "debtor" includes the debtor's spouse, parent (if the debtor is a minor), guardian, executor, or administrator.

WHEREFORE, the Court should enter judgment in favor of plaintiffs for:

(1) Damages;

(2) Attorney's fees, litigation expenses and costs of suit;

(3) Such other and further relief as the Court deems proper.

## **COUNT II - INVASION OF PRIVACY - RIGHT TO SECLUSION**

67.     Plaintiffs incorporate ¶¶1-57.

68.     This claim is brought by Ms. Hart and Tammy Dobbin against the Corporations and Wells Fargo.

69.     Wells Fargo, acting on its own behalf and through its agents, and the Corporations violated plaintiffs' right to seclusion and to not be portrayed in a false light by:

a.      discussing Ms. Hart's and/or Ms. Tammy Dobbin's alleged delinquency and/or pending arrest and/or pending imprisonment with numerous third parties.

12

      b.      notifying Ms. McKinney and Ms. Tammy Dobbin's other MySpace friends that she was delinquent on a loan and that a complaint had been filed against her.

      c.      threatening arrest and imprisonment of Ms. Hart to third parties.

      d.      telling Ms. Tammy Dobbin that she had to turn over the vehicle her grandmother purchased or it would be reported as stolen.

      e.      making or allowing agents to make numerous phone calls to plaintiffs and third parties after being requested to refrain from contact by telephone.

70.      By these actions, defendants, Wells Fargo and the Corporations intentionally intruded upon plaintiffs' right to seclusion and to not be portrayed in a false light.

71.      These actions would be highly offensive to a reasonable person.

WHEREFORE, the Court should enter judgment in favor of plaintiffs against defendants for:

(1) Actual damages, including general damages, in excess of $50,000;

(2) Punitive damages;

(3) Costs of suit;

(3) Such other and further relief as the Court deems proper.

## COUNT III - INVASION OF PRIVACY - PUBLICATION OF PRIVATE FACTS

72.      Plaintiffs incorporate ¶¶1-57.

73.      This claim is brought by Ms. Hart and Tammy Dobbin against the Reliable Recovery, F3 and Silicon Valley and Wells Fargo.

74.      Reliable Recovery and Wells Fargo, through its agents, intentionally

13

violated Ms. Hart's privacy by publishing private facts by speaking with her neighbors and leaving notices with her neighbors or posting on their doors regarding her alleged criminal conduct and her personal indebtedness.

75.     Silicon Valley, F3 and Wells Fargo, through its agents, intentionally violated Ms. Tammy Dobbin's privacy by publishing private facts by notifying Ms. McKinney and Ms. Tammy Dobbin's other MySpace friends that she was delinquent on a loan and that a complaint had been filed against her.

76.     The disclosures were of a public nature.  Ms. Hart's neighbors and any individual of Ms. Hart's community could read these notices.

77.     Ms. Tammy Dobbin's MySpace friends could read these notices.

78.     The facts concerned Ms. Hart and Ms. Tammy Dobbin's private lives.

79.     The publication was of information which would be highly offensive to a reasonable person.

80.     Ms. Tammy Dobbin was deeply embarrassed by the notification of her friends of these alleged facts.

81.     The matter publicized was not a legitimate concern of the public.

WHEREFORE, the Court should enter judgment in favor of plaintiffs against defendants for:

(1) Actual damages, including general damages, in excess of $50,000;

(2) Punitive damages;

(3) Costs of suit;

(4) Such other and further relief as the Court deems proper.

14

## COUNT IV - ICFA

82.     Plaintiffs incorporate ¶¶1-57.

83.     This claim is brought by Ms. Hart, Tammy Dobbin and Colleen Dobbin against Wells Fargo.

84.     Wells Fargo, acting on its own behalf and through its agents, and the Corporations engaged in unfair and deceptive practices, in violation of §2 of the ICFA, 815 ILCS 505/2, by:

a.      contacting Ms. Tammy Dobbin's MySpace friends under the false pretense that a complaint was filed against Ms. Tammy Dobbin;

b.      misrepresenting that the plaintiffs and her family were going to be arrested, imprisoned or charged with criminal conduct;

c.      misrepresenting that Ms. Hart would only be contacted in writing;

d.      contacting Ms. Tammy Dobbin's and Ms. Hart's relatives, friends and neighbors regarding alleged delinquency and indebtedness.

e.      invading Ms. Tammy Dobbin's and Ms. Hart's privacy and defaming them.

f.      contacting Ms. Colleen Dobbin at her place of work repeatedly and frequently, even after being told numerous times to stop.

85.     Defendants engaged in such conduct in the course of trade or commerce.

86.     Defendants intended that Ms. Hart, Ms. Tammy Dobbin and third parties rely on these misrepresentations in order to receive money, information or property from Ms. Hart and/or Ms. Tammy Dobbin.

15

87.     Contacting Ms. Colleen Dobbin repeatedly at her place of work seeking to find Ms. Tammy Dobbin is an unfair shifting of costs from Wells Fargo to Ms. Colleen Dobbin. Instead of using their own investigators in order to find Ms. Tammy Dobbin, Wells Fargo harassed Ms. Colleen Dobbin relentlessly attempting to force her to turn over her daughter.

88.     Wells Fargo's contacts with Ms. Colleen Dobbin were oppressive because she never consented to be contacted, Wells Fargo was contacting her at her place of work and on her cellular phone when she had no option of avoiding their calls and Wells Fargo repeatedly phoned her after she told them at least ten times that she did not want them to keep on calling her.

89.     As a result of these practices, the plaintiffs have suffered injury to their reputation.

90.     Ms. Hart and Tammy Dobbin suffered extreme emotional distress by the notification of friends, relatives and neighbors of alleged criminal conduct and financial troubles

91.     Ms. Hart suffered injury to her medical situation.

92.     Ms. Colleen Dobbin suffered an impairment to her advancement at her place of work and suffered damages resulting from Wells Fargo's use of her cellular phone minutes.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and against defendants for:

(1) Actual damages, in excess of $50,000;

(2) Punitive damages;

(3) An injunction against further violations.

16

(4) Attorney's fees, litigation expenses and costs of suit;

(5) Such other and further relief as the Court deems proper.

## COUNT V – DEFAMATION PER SE

93.     Plaintiffs incorporate ¶¶1-57.

94.     This claim is brought by Ms. Hart against the Corporations and Wells Fargo.

95.     The Corporations and Wells Fargo, acting through its agents, made false accusations that Ms. Hart had committed a crime and that Ms. Hart would be arrested as a fugitive from the law.  These are accusations of criminal conduct and are defamation per se.

96.     The Corporations and Wells Fargo, acting through its agents, made the false accusations to a third party, including Ms. Hart's neighbors and relatives.

97.     Accusations of the Corporations and Wells Fargo's, acting through its agents, caused Ms. Hart to suffer extreme emotional distress by notifying friends, relatives and neighbors of alleged criminal conduct and financial troubles.

98.     Ms. Hart suffers from diabetes and high blood pressure and the conduct of the defendants has aggravated her medical condition.

WHEREFORE, plaintiffs request the following relief in favor of plaintiffs and against defendants:

(1)     Actual damages;

(2)     Punitive damages in an amount to deter the Corporations and Wells Fargo from tortious acts in the future;

(3)     Such other or further relief as the Court deems just and proper

17

## COUNT VI – DEFAMATION PER QUOD

99.     Plaintiffs incorporate ¶¶1-57.

100.    This claim is brought by Tammy Dobbin against Silicon Valley, F3 and Wells Fargo.

101.     Silicon Valley, F3 and Wells Fargo, acting through its agent,  made false accusations that Ms. Tammy Dobbin was delinquent on a loan and that a complaint had been filed against her.

102.     Silicon Valley, F3 and  Wells Fargo, acting through its agents, made the false accusations to a third party, Ms. Tammy Dobbin's MySpace friends, including Ms. McKinney.

103.      Silicon Valley, F3 and Wells Fargo, acting through its agents, caused Ms. Dobbin to suffer extreme embarrassment and stress by notifying friends and relatives of Ms. Dobbin's alleged financial and legal troubles.

WHEREFORE, plaintiffs request the following relief in favor of plaintiffs and against defendant:

(1)     Actual damages;

(2)     Punitive damages in an amount to deter the Corporations and Wells Fargo from tortious acts in the future;

(3)     Such other or further relief as the Court deems just and proper

## COUNT VII – VIOLATION OF THE TCPA - CLASS ACTION

104.     Plaintiffs incorporate ¶¶1-57.

105.    This claim is brought on behalf of Colleen Dobbin, Tammy Dobbin and

18

other class members against Wells Fargo.

106.     Section 227(b)(1)(A)(iii) of the TCPA makes it unlawful to use any automatic telephone dialing system to any telephone number assigned to a cellular telephone service.

107.     The TCPA provides a private right of action for a violation of §227(b), pursuant to which a person or entity may recover $500 for each violation, and treble that amount if defendant willfully or knowingly violated the provision.

108.     Wells Fargo violated the TCPA, 47 U.S.C. §227(b)(1)(A)(iii), by using an automatic dialing system to dial Ms. Colleen Dobbin's and Ms. Tammy Dobbin's cellular phones.

109.     Wells Fargo did not have prior express consent from Ms. Colleen Dobbin or Ms. Tammy Dobbin to call them on their cellphones.

110.     Ms. Colleen Dobbin and Ms. Tammy Dobbin were damaged as a result.

111.     On information and belief, Wells Fargo willfully and knowingly violated the TCPA as demonstrated by dialing Ms. Colleen Dobbin's and Ms. Tammy Dobbin's cellular phones.

112.     Unless enjoined from doing so, defendant is likely to commit similar violations in the future.

## CLASS ALLEGATIONS

113.     The class consists of all natural persons whom Wells Fargo contacted on their cellular phones by using an automatic dialing system on or before a date 20 days following the filing of this action and after a date four years prior to the filing of this action.

19

114.    The class is so numerous that joinder is impracticable.  On information and belief, there are more than 50 members of the class.

115.    There are questions of law and fact common to the members of the classes, which common questions predominate over any questions that affect only individual class members.  The predominant common question is whether defendant's actions violate the TCPA.

116.    Colleen Dobbin's and Tammy Dobbin's claim are typical of the claims of the class members.  All are based on the same factual and legal theories.

117.    Colleen Dobbin and Tammy Dobbin will fairly and adequately represent the interests of the class members.  Colleen Dobbin and Tammy Dobbin have retained counsel experienced in consumer credit and debt collection abuse cases.

118.    A class action is superior to other alternative methods of adjudicating this dispute.  Individual cases are not economically feasible.

———

_____WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and

the class members and against defendant for:

        a.       Statutory damages;

        b.       Attorney's fees, litigation expenses and costs of suit;

        c.       Such other or further relief as the Court deems appropriate.


             Respectfully submitted,

             By: /s/Keith J.Keogh
                 Keith J. Keogh

Keith J. Keogh
Ainat Margalit
KEOGH LAW, LTD.
101 N. Wacker Dr., Suite 605
Chicago, IL 60606
312.726.1092
312.726.1093 (fax)


**JURY DEMAND**

Plaintiffs demand a trial by jury.

       /s/Keith J. Keogh


**CERTIFICATE OF SERVICE**

       I, Keith J. Keogh, hereby certify that on December 17, 2010, I served the
foregoing to counsel of record listed above via the ECF system for the Northern District of
Illinois and the registered agent of F3 Solutions, LLC by US Mail at the address below:

**F3 Solutions, LLC c/o registered agent Michael Harazin**
**314 Driftwood Lane, Aurora, IL 60504**

            /s/Keith J. Keogh