IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Tammy Dobbin, Colleen Dobbin and | ) | |
| Dolores Fletcher Hart, | ) | |
| | ) | 10 C 268 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Judge Matthew F. Kennelly |
| | ) | |
| Wells Fargo Auto Finance, Inc., Silicon Valley | ) | |
| Recovery, Inc., F3 Solutions, LLC, Reliable | ) | |
| Recovery Services, | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO WFAF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs respectfully submit the following opposition to Wells Fargo Auto Finance, Inc.'s

("WFAF") motion for summary judgment as to Count VII of the Second Amended Complaint.

**I.     INTRODUCTION**

WFAF has filed a motion for summary judgment as to the class claim brought by Colleen

Dobbin and Tammy Dobbin in Count VII under the Telephone Consumer Protection Act (the

"TCPA"), 47 U.S.C. §227.   WFAF's sole argument is that the calls to Ms. Colleen and Tammy

Dobbin's (the "plaintiffs") cellular telephones were manually made and not made by an autodialer

as defined by the TCPA.  Yet, the determinative issue is not whether the call was made by an

autodialer, but whether the call was made by equipment that has the *capacity* to store or produce

telephone numbers using a random or sequential generator.  Because the equipment in question does

have this capacity (the telephone used is the same telephone the WFAF agent uses when the call is

autodialed, the agent is logged into the autodialer system and the telephone is physically connected

to the autodialer control system and is part of an integrated system), WFAF's motion for summary

judgment should be denied.

III.   **ACCORDING TO THE TCPA, THE COURTS AND THE FCC,
       THE TCPA PROHIBITS CALLS TO CELLPHONE NUMBERS
       FROM EQUIPMENT THAT HAS THE <u>CAPACITY</u> TO AUTODIAL**

   a.   **THE TCPA**

   The TCPA states, in relevant part, that:

   > It shall be unlawful for any person within the United States, or any person outside the United
   > States if the recipient is within the United States. . . to make any call (other than a call made
   > for emergency purposes or made with the prior express consent of the called party) using any
   > automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone
   > number assigned to a paging service, cellular telephone service, specialized mobile radio
   > service, or other radio common carrier service, or any service for which the called party is
   > charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).   The TCPA defines "automatic telephone dialing system" as

"equipment which has the *capacity* – (A) to store or produce telephone numbers to be called using

a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227 (a)(1).

[emphasis added]

   In construing the provisions of a statute, we first look to the language of the statute to

determine whether it has a plain meaning.   The first canon of statutory interpretation requires the

court to look to the language of the statute. *United States v. Miscellaneous Firearms*, 376 F. 3d 709,

712 (7th Cir. 2004).   When interpreting statutory language, the court "must presume that a legislature

says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v.

Germain*, 503 U.S. 249, 253-54 (1992) (citations omitted). "'The preeminent canon of statutory

interpretation requires us to presume that [the] legislature says in a statute what it means and means

in a statute what it says there.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F. 3d 946, 951 (9th Cir.

Cal. 2009) (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004).   Reviewing the

TCPA, the statutory text is clear and unambiguous. *Id.*

2

> When evaluating the issue of whether equipment is an ATDS[automatic telephone dialing system], the statute's clear language mandates that the focus must be on whether the equipment has the capacity 'to store or produce telephone numbers to be called, using a random or sequential number generator.' Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it.

*Id.* The statute does not require that the defendant actually auto-dial a telephone number. Rather, the system only needs to have the capacity to do so in order to be liable pursuant to the Act.

As the Northern District held earlier this year:

> . . . reading the statute as Defendants propose, with a more narrow view to require Plaintiff to specifically allege that Defendants used the equipment's capacity to store or produce telephone numbers using a random or sequential generator would render the phrase 'which has the capacity' mere surplusage. Congress included a definition that provides that in order to qualify as an automatic telephone dialing system, the equipment need only have the capacity to store or produce numbers . . . Here, Plaintiff included allegations in his complaint sufficient to meet the requirements of an automatic telephone dialing system, and a contrary ruling would render portions of the TCPA meaningless.

*Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1010-1011 (N.D. Ill. 2010).

Several United States Federal Courts, including the Court of Appeals for the Ninth Circuit, have held that the focus must be on the equipment's *capacity* to store, produce, or call randomly or sequentially generated telephone numbers not whether the equipment actually does these things. *Satterfield*, 569 F. 3d at 951; *Lozano*, 702 F. Supp. 2d at 1010-1011; *Kazemi v. Payless Shoesource, Inc.*, 2010 U.S. Dist. LEXIS 27666 (N.D. Cal. Mar. 12, 2010); *Hicks v. Client Services,* Inc., 2009 WL 2365637 (S.D.Fla. June 9, 2009).

**b.    FCC RULES AND REGULATIONS**

As noted above, the courts have found that the issue is not whether the equipment made a call using an autodialer, but whether the equipment had the capacity. Plaintiffs agree with WFAF that the Hobbs Act, 28 U.S.C. § 2342(1), prevents a district court from reviewing the validity of FCC

3

regulations and they are presumed valid. *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F. 3d 443, 449 (7th Cir. 2010).

Yet, the FCC has not limited the definition of what constitutes capacity; instead, every FCC ruling that discusses capacity has expanded the definition. The FCC has stated that the basic function of such equipment is "the capacity to dial numbers without human intervention." *In the Matter of Rules & Regulations implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. R. 14014, ¶132 (Fed. Commc'n Comm'n July 3, 2003) ("2003 FCC Order").

The FCC has stated that the "purpose of the requirement that equipment have the capacity to store or produce telephone numbers to be called is to ensure that the prohibition on autodialed calls not be circumvented." 2003 FCC Order at ¶133. The FCC has repeatedly affirmed this position and expanded the definition of "automatic telephone dialing system." *In the Matter Of Rules and Regulations Implementing the Telephone Consumer Protection Act Of 1991: Request of ACA International for Clarification and Declaratory Ruling*, 07-232, ¶ 12, n. 23 (2007) ("2007 FCC Order") (quoting and affirming the 2003 FCC Order).

As conceded by WFAF, the FCC held that an autodialer can be "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls." 2003 FCC Order. The FCC also held that this "hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random." *Id.* at ¶131; *See also* 2007 FCC Order (Collectors are not exempt from the TCPA when equipment operates independently of calling lists as it would be inconsistent with the purpose of the TCPA and the intent of Congress in protecting consumers from such calls.)

WFAF disingenuously argues that the FCC has ruled that a manual call cannot be deemed

4

an autodialed call. The FCC made no such ruling. In discussing the request to prohibit all calls to cellular telephone numbers from any source, the FCC held:

> In addition, we determined not to prohibit all live solicitations to wireless numbers, but noted that the TCPA already prohibits such calls to wireless numbers using an autodialer.

> [Footnote 137]Thus, calls that are dialed manually and connect to live operators could be placed to wireless numbers. *2003 TCPA Order*, 18 FCC Rcd at 14116, para. 166. *But see* ATA Opposition at 4-6 (arguing that the Commission should clarify that it did not intend to cut off calls to wireless phones that are placed by predictive dialers but connect to live operators).

*In the Matter Of Rules and Regulations Implementing the Telephone Consumer Protection Act Of 1991*, FCC Rul. 05-28, CG Docket No. 02-278, p. 19 m. 137. ("2005 FCC Order")

This provision does not mean that manually dialed calls that are made from an autodialer are excluded from the TCPA. It only means that manually dialed calls that are not made from equipment that has the capacity to autodial are excluded. As noted above, the 2003 order cited by WFAF also specifically holds that the basic function of such equipment is "the capacity to dial numbers without human intervention." *2003 FCC Order*.

Once again, to exclude all calls that are made with human intervention or manually dialed calls, regardless of whether the equipment to make those calls has the capacity to autodial, would render the term "which has the capacity" mere surplusage as well as render meaningless all of the FCC rulings finding that the issue is the capacity of the equipment.

To the extent clarification was needed, the FCC did so. In 2007 it held: "In particular, the Commission clarified the rules on autodialed and prerecorded message calls to wireless telephone numbers. Specifically, the Commission affirmed that it is unlawful 'to make *any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone

5

number." 2007 FCC Order [emphasis in original]. In the same ruling, the FCC again held, "We also reiterate that the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party." *Id.* at ¶11.

The FCC clarification makes it clear that any call, which would include manually dialed calls, are prohibited if the equipment in question has the capacity to autodial. As such, the issue remains whether the calls to plaintiffs' cellular telephones were made by an autodialer or system that has the capacity to store or produce telephone numbers using a random or sequential generator.

Rather then dealing with plaintiffs' argument head on and explaining why plaintiffs' complete cites to the FCC are incorrect,[1] WFAF argues that public policy concerns refute plaintiffs' arguments. Yet, once WFAF starts relying on public policy arguments, it is essentially requesting this Court over rule the FCC even though it repeatedly argued that the *Hobbs Act* prevents such a ruling.

## III.  THE TELEPHONE SYSTEM USED TO CALL PLAINTIFFS' CELLULAR TELEPHONES HAS THE CAPACITY TO AUTOMATICALLY DIAL

Because the issue is whether the equipment used has the capacity to autodial, an examination of the equipment and WFAF's call centers is required.

The call centers for Wells Fargo Auto Finance Division ("Call Centers") are all set up in substantially the same manner. Plaintiffs' Statement of Additional Facts ("PSAF") ¶1. Each agent in the Call Center sits at a cubical that has a desk, one telephone, one computer and maybe a headset for the computer. *Id.* The telephone at the agents' desk in the call center is an Avaya brand

---

[1] WFAF had the benefit of reviewing plaintiffs' filed response to its prior motion for summary judgment..

telephone, which uses an Avaya brand PBX (telephone switch.) PSAF ¶2.









8













REDACTED

REDACTED

REDACTED



## IV.  WFAF'S AUTO DIALER CALL LOGS ARE NOT BUSINESS RECORDS

In its initial motion for summary judgment, Mr. Heyse submitted an affidavit attesting that

the report showing that the autodialer did not call the plaintiffs' cellular telephones attached to his

affidavit as *Exhibit A* was a business record and kept in the ordinary course of WFAF's business.

See doc 52-2, WFAF SMF ¶15 and Heyse affidavit ¶17. However, that report was not made in the

normal course of business, but rather at the direction of Wells Fargo's legal department[7].

In an attempt to "cure" Mr. Heyes' testimony, WFAF now has Mr. Vyff submit an affidavit

attesting that the new report, which is identical to the prior report, is a business record.  See Vyff Aff.

---

[7] Mr. Heyse had no personal knowledge of the query run to generate the records or who ran the report. *Exhibit 1*, Heyse Dep. 133:13-15. These records were not made in the normal course of business, but rather at the direction of Wells Fargo's legal department. *Id.* at 133:24, 134:1-4. Mr. Heyse did not direct the report to be created, rather the legal department created the request for the report and he was shown the information. *Id.* at 135:11-19. Mr. Heyse has not spoken directly to the person who ran the queries for the report. *Id.* at 136:2-8  Further, Mr. Heyse has no knowledge of who ran the report, whether it was multiple people or what their understanding of the query was. *Id.* at 138:1-6. Mr. Heyse verified the report by requesting the same unknown query run and checking the beginning and end of the report to see if it matched the first report. *Id.* at 136:2-6, 137 5-13. Mr. Heyse admits that if the initial query was flawed, the subsequent reports would have the same results. *Id.* at 137 14-21.

attached as *Exhibit 3* to WFAF's 56.1 statement.

Because the report was created during this litigation for this litigation, it is not a business record. *United States v. Blackburn*, 992 F. 2d 666, 670 (7th Cir. 1993) (noting "well-established rule that documents made in anticipation of litigation are inadmissible under the business records exception"); *see also Lust v. Sealy, Inc.*, 383 F. 3d 580, 588 (7th Cir. 2004). *See Paddack v. Dave Christensen, Inc.*, 745 F. 2d 1254, 1258 (9th Cir. 1984) (where trust funds had no routine audit practice, compliance audit report prepared when funds suspected employer may not have complied with its contribution obligations not admissible as business record), cited with approval in *AMPAT/Midwest, Inc. v. Ill. Tool Works Inc.*, 896 F. 2d 1035, 1044-45 (7th Cir. 1990).

Because Exhibit A to Mr. Vyff's affidavit is not a business record, but was originally created at the instruction of the legal department during the course of this litigation and replicated for the same purposes, it must be stricken and all argument relying on the report be disregarded. Therefore, WFAF's argument that it did not use what it concedes is an autodialer to call plaintiffs is unsupported and summary judgment should be denied on that ground alone as its WFAF's initial burden to show that it is entitled to judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## IV.    CONCLUSION

WFAF's Avaya telephones are part of the integrated autodialer system and the agent can switch back and forth between autodialed calls and manual calls using the same telephone while logged in to the Magellan user interface system and maintaining connectivity with the dialer, the telephones have the capacity to autodial and calls made with them by WFAF to cellular phones are therefore, prohibited by the TCPA. At the very least, it is a question of fact when viewed in the light most favorable to plaintiffs.

15

Respectfully submitted,


/s/ Keith J. Keogh


Keith J. Keogh
Craig Shapiro
Ainat Margalit
KEOGH LAW, LTD.
101 N. Wacker Dr., Suite 605
Chicago, IL 60606
312.726.1092
312.726.1093 (fax)

## CERTIFICATE OF SERVICE

    I, Keith J. Keogh, hereby certify that on March 23, 2011, I caused a redacted copy of the foregoing to be served upon counsel of record for defendants through the District Court for the Northern District of Illinois electronic filing system and an un-redacted to counsel of record copy via e-mail.

/s/ Keith J. Keogh

17