IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| TAMMY DOBBIN, COLLEEN DOBBIN, and DOLORES HART, | ) ) ) | |
|---|---|---|
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | Case No. 10 C 268 |
| WELLS FARGO AUTO FINANCE, INC., SILICON VALLEY RECOVERY, INC., F-3 SOLUTIONS, LLC, and RELIABLE RECOVERY SERVICES, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Tammy Dobbin, Colleen Dobbin, and Dolores Fletcher Hart have sued Wells Fargo Auto Finance (Wells Fargo), Silicon Valley Recovery, Inc., F3 Solutions, LLC, and Reliable Recovery Services, alleging invasion of privacy, defamation, and violations of the Illinois Collection Agency Act and the Illinois Consumer Fraud Act. Tammy and Colleen Dobbin also assert, on behalf of a putative class, a claim against Wells Fargo for violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227.

Defendants have filed various motions for summary judgment. In this decision, the Court considers Wells Fargo's motion for summary judgment on Tammy and Colleen Dobbin's TCPA claim. For the reasons stated below, the Court grants the motion.

**Background**

In October 2006, Hart purchased a car for her granddaughter, Tammy Dobbin. In connection with the purchase of the car, Hart signed a motor vehicle retail installment contract that was assigned to Wells Fargo. Hart did not make the required payments under the contract. Wells Fargo call center agents contacted plaintiffs in an attempt to recover the overdue payments. Wells Fargo also hired the other three defendants to collect the debt and repossess the car.

Plaintiffs allege that defendants, during the course of their collection efforts, violated the Illinois Collection Agency Act (count 1), invaded plaintiffs' right to seclusion (count 2), wrongfully published private facts about them (count 3), engaged in unfair competition in violation of the Illinois Consumer Fraud Act (count 4), and defamed them (counts 5 and 6). Tammy and Colleen Dobbin also allege, on behalf of themselves and a putative class, that Wells Fargo violated the TCPA by calling their cell phones without permission using an automatic telephone dialing system (count 7). In this decision, the Court addresses Wells Fargo's motion for summary judgment on the TCPA claim.

The parties agree on the following facts. Wells Fargo uses a predictive dialer called the "Conversations System" to communicate with customers. A predictive dialer is a type of automatic telephone dialing system that uses generated, stored, or otherwise entered phone numbers to automatically make outgoing telephone calls. Wells Fargo's predictive dialer also has the capacity to connect available call center agents with successfully completed outbound calls.

One component of the Conversations System, the universal server, stores or produces phone numbers to be dialed. The universal server then passes the numbers

on to the digital communications processor, which dials them. When an outbound call is successfully dialed, the digital communications processor can either play a pre-recorded message or connect the call to the desk phone of an available call center agent.

Each agent at a Wells Fargo call center sits at a cubicle with a desk phone and a computer. The computers support a software program called Magellan through which call center agents are able to log into the universal server. Once an agent has logged into the universal server, the Conversations System can connect the agent to successfully completed outbound calls through the desk phone.

An agent may also make outbound phone calls by manually dialing a phone number into the keypad of the desk phone. An agent need not log into the universal server to make an outbound call in this manner. An agent may work part of the day by using the desk phone's keypad to manually dial calls and part of the day accepting autodialed calls from the Conversations System. The agent uses the same desk phone for all such calls.

## Discussion

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the Court draws reasonable inferences in favor of the non-moving party. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The TCPA provides, in relevant part:

It shall be unlawful for any person within the United States . . . –

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) *using any automatic telephone dialing system* . . .

(iii) to any telephone number assigned to a . . . cellular telephone service.

47 U.S.C. § 227(b)(1) (emphasis added). The term "automatic telephone dialing system" means:

> *equipment which has the capacity--*
> (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
> (B) to dial such numbers.

*Id.* § 227(a)(1) (emphasis added). Tammy and Colleen allege that Wells Fargo violated the TCPA by calling their cell phones without their consent "using" "equipment which has the capacity" to autodial.

Wells Fargo has moved for summary judgment on the TCPA claim. It contends that, though it has an automatic telephone dialing system, it did not use that system to call Tammy or Colleen Dobbin's cell phones. It thus argues that the calls were either manually dialed or never made and therefore that plaintiffs' TCPA claim fails.

I. **Admissibility of Wells Fargo computer records**

In support of its motion, Wells Fargo submits a printout of computer records accompanied by an affidavit from Wells Fargo call center planning and analysis manager Jason Vyff. *See* Wells Fargo LR 56.1 Stat., Ex. 3. According to Vyff, the

records list all phone numbers Wells Fargo called using autodialing technology between March 1, 2006 and February 7, 2011, with the exception of a small set of numbers described below. *Id.* at 3. The records do not include Tammy and Colleen Dobbin's cell phone numbers. *Id.*

Plaintiffs do not dispute the contents of this evidence. In fact, they concede that when the Wells Fargo Conversations System sends a phone number to the digital communications processor to dial, the universal server makes a record of the action regardless of whether anyone answers the call. They concede that the Conversations System stores the records on computer servers. They also concede that the only way the automatic dialer could make a call without leaving such a record was if the automatic dialer dialed a particular number, a person answered, the automatic dialer connected the person to a call center agent, the person told the agent to dial a second number, and the agent did so. In such a case, the universal server would write over the first number dialed and record only the second number. Plaintiffs do not suggest that the calls Wells Fargo allegedly made to their cell phones were omitted from Wells Fargo's records in this manner. That would be unlikely, in any event, as plaintiffs allege that Wells Fargo called Tammy Dobbin "repeatedly on her cell phone" and placed calls to Colleen Dobbin on her cell phone and at work that were "very frequent and lasted throughout 2008 and continued until as recently as April 2009." 2d Am. Compl. ¶¶ 33, 38.

Plaintiffs do, however, challenge Wells Fargo's contention that the records it has offered are admissible under the "business records" exception to the hearsay rule. "Federal Rule of Evidence 803(6) excepts certain 'records of regularly conducted

activity' from Rule 802's general ban on the admission of hearsay evidence." *United States v. Borrasi*, 639 F.3d 774, 779 (7th Cir. 2011) (quoting Fed. R. Evid. 803)(6)).[1]  "It is well established that computer data compilations are admissible as business records under [Rule] 803(6) if a proper foundation as to the reliability of the records is established." *United States v. Briscoe*, 896 F.2d 1476, 1494 (7th Cir. 1990) (citation omitted).  To establish a proper foundation at the summary judgment stage, "the party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial, for example, a custodian or anyone qualified to speak from personal knowledge that the documents were admissible business records." *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000) (citations omitted).

Plaintiffs do not dispute that Vyff's affidavit satisfies the foundational requirements for admission of the records.  Instead, they contend that the evidence is inadmissible because the records – that is, the computer printouts – were prepared for

---

[1] Rule 803(6) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
. . . .
(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. . . .

Fed. R. Evid. 803(6).

6

this litigation.  The Seventh Circuit has repeatedly held, however, that "[c]omputer data compiled and presented in computer printouts prepared specifically for trial is admissible under Rule 803(6), even though the *printouts* themselves are not kept in the ordinary course of business," as long as the underlying data was kept in the ordinary course of business.  *United States v. Fujii*, 301 F.3d 535, 539 (7th Cir. 2002) (emphasis in original) (citing *Briscoe*, 896 F.2d at 1494-95); *see also Alexian Bros. Health Providers Ass'n v. Humana Health Plan, Inc.*, 608 F. Supp. 2d 1018, 1024 n.6 (N.D. Ill. 2009) ("[I]t has long been established that the test for admissibility of computer-generated records focuses on whether the *data* compiled and presented in computer printouts meet the requirements of Rule 803(6) – even when those printouts have been 'prepared specifically for trial.") (emphasis in original) (citations and internal quotation marks omitted).  Vyff's affidavit affirms that Wells Fargo kept the underlying data that generated the reports in the ordinary course of its business.  The Court concludes that the records are admissible under Rule 803(6).

## II.     TCPA requirements

Plaintiffs provide no evidence that Wells Fargo autodialed their cell phone numbers and thereby concede that Wells Fargo manually dialed their cell phones if it called them at all.  Instead, plaintiffs assert that the TCPA prohibits even manually dialed calls to cell phones made "using" "equipment which has the capacity" to autodial. *See* 47 U.S.C. § 227(a)(1), (b)(1).  This Court need not address whether the TCPA covers such calls because plaintiffs fail to provide any evidence that Wells Fargo called them using equipment that meets the statutory definition.

Plaintiffs' evidence consists of a declaration by telecommunications technology consultant Randall Snyder. See Wells Fargo LR 56.1 Stat., Ex. 2. Snyder does not state that manually dialed calls made from Wells Fargo call center desk phones are made using equipment with the capacity to autodial. Instead, he focuses on whether Wells Fargo has an automatic telephone dialing system at all, a fact that Wells Fargo concedes.

Snyder does conclude, however, that "the[] desk-phones are part of the predictive dialer system." Id. ¶ 17. He provides three rationales for this conclusion. First, he reasons, "the Conversations System is the sum of its component parts, and the desk-phones are physically connected to the Conversations System." Id. Second, he observes that, "[f]or manually and individually dialed outbound calls using desk-phones, these desk-phones still maintain connectivity to the Conversations System." Id. Finally, he notes that, "for a call center agent to make use of the Conversations System, that call center agent is required to have a desk-phone." Id.

Plaintiffs concede, however, that Wells Fargo's agents' desk phones can also be used independently of its predictive dialing technology – that is, while a call center agent is not logged into the universal server. And plaintiffs do not suggest that the desk phones have any capacity to autodial on their own. The Court takes as true Snyder's statements that the agents' desk phones, including those apparently used to call plaintiffs, were physically connected to Wells Fargo's automatic dialing system and that the system is used in conjunction with such phones. Snyder's affidavit, however, does not establish a genuine issue of fact regarding whether manually dialed calls made from Wells Fargo call center desk phones are made "using" equipment with the capacity to

8

autodial within the meaning of the TCPA.

To summarize, there is no evidence that the calls to plaintiffs' cell phones were autodialed. Rather, the evidence is that the calls were dialed manually. Plaintiffs concede that the desk phones can be used independently of the predictive dialing technology and thus are not necessarily connected to the Conversations System when an agent manually dials a call. Plaintiffs have offered no evidence from which a reasonable jury could find that such a connection existed when the calls at issue here were made. Given these circumstances, no jury reasonably could find based on the evidence presented to the Court that Wells Fargo employees called plaintiffs' cell phones "using" equipment which has the capacity to autodial.

**Conclusion**

For the reasons stated above, the Court grants Wells Fargo's motion for summary judgment on count 7 of plaintiffs' second amended complaint [docket no. 103].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 14, 2011

9